Thank you, Your Honor. May it please the Court, Mark Perry for the Hewlitt-Packard Benefits Plan. Your Honors, the District Court committed three fundamental errors that are detailed in the briefs. I would like to begin today with the contractual limitations period. ERISA does not require employers to offer benefit plans, nor does it mandate the terms of such plans. The Supreme Court has made clear in decision after decision that employers may design plans essentially as they see fit. They are contracts with the employees and they are governed according to the law of contracts. The plan in this case says that all legal action on the disability claim must be commenced within four years of the date of loss. Excuse me. The date of loss is a common concept in insurance policies in California and elsewhere. It appears in the insurance code. And lest there be any doubt, it's defined in this plan, in the summary plan description, which is a required document under ERISA. It defines loss as the onset of disability. What does the California code say about what it means? Your Honor, it doesn't say what it means. It provides that certain insurance contracts must have a limitations period that runs from either the date of loss or the date of proof of loss, depending on the type of policy. A fire policy, for example, has to be a fire claim, has to be filed within 12 months of the loss. Loss is then defined in the case law as the fire. My point was it's simply a common term in a variety of contexts. Let me just tell you, speaking only for myself, of course, where my concern lies in your argument. Even assuming that one of the many dates that's floating around in this case starts the contractual period running, why aren't you stopped from arguing for that, whatever it is, by virtue of the relationship with the claimant's lawyer? For example, there's a report of a phone call stating that the appeal will remain pending internally. So let's assume we just buy into everything you say. Why do we even get there as a theoretical matter? Because why isn't the district court correct on the basis of a stop-all? Your Honor, there are two answers to that question, if I can take it in two steps. The first is that the contractual limitations period, the repose period, is unrelated to the administrative appeal. It says any legal action must be commenced within four years of the loss. The loss is defined as the onset of disability, no matter what happens in the administrative appeal. Now, it is possible that if the administrative appeal were to take forever, the case that the Seventh Circuit confronted in Doe, so that it ran, the limitations period may not be enforceable. That's not what happened here. Here we had the claimant's attorney asking for it to be left open, and then they didn't do anything. It wasn't the plan that was responsible, but rather the claimant's attorney. Well, it's certainly there's blame to go around in the sense that, yes, three years is a really long time to respond with additional information, but on the other hand, isn't there a lulling into believing that that is going to be okay? I would submit that the inference is exactly the opposite, Your Honor. The plan had every right to expect that the claimant had abandoned her internal appeal and to rely on a contractual provision that once four years had run, it couldn't be sued. That's the reason that you have periods of limitation and repose. So the claims don't come back years later and turn to federal appeal. Well, I understand, but do you agree theoretically that a period of that kind in a contract can be either waived or that a stockhold can apply to it? Just as a theoretical matter, I understand you don't concede that, but … Absolutely, Your Honor. If the waiver or the extension went to the time to sue, the claimant could extend that time. But it's important to point out here that the time to sue is not tied in the plan to the internal appeal, and the communications between the parties went only to the internal appeal. She still had plenty of time to sue after the appeal was abandoned or whatever it was. The other point, Your Honor, and then this goes back to your original question, if it was extended by the agreement of the parties, then it was absolutely erroneous to apply a de novo standard of review in the district court. Well, let's assume just for the sake of the question I'm about to ask that we agree with you on your second and third points, but disagree on the timeliness. Who should decide under a correct legal standard? Us, since we have here at least a de novo review in the procedural posture, or send it back to the district court with instructions to do it? Right. Which is the correct answer? The ordinary court, Your Honor, is to send it back to the district court. In most cases, the district court has applied an improper legal standard in the appeal of an arrest of benefits determination, and the court of appeals does not sit to sift through the medical evidence and apply the abuse of discretion standard, but rather allows the district court to do that in the first instance. We would submit that's appropriate here. The court's ruling, you know, was before Black and Decker, clearly rests on the treating physician rule, and I believe that all of the court's conclusions were influenced by that prism, a prism that was demanded, of course, by Ninth Circuit law at that time, but that has since been removed by order of the Supreme Court, and the district court, we believe, will see it differently if we're to present it to him. The briefs do go through the evidence, but they don't contain the full-on recitation. If this court would rather do it, I'd be happy to address the medical evidence. I mean, if we're applying an abuse of discretion standard, there's no basis for overturning the administrator's determination. The claim incites the Lange case, which is instructive, I believe. It's a decision involving the same disease, alleged malady, and the court said that if it was an abuse of discretion standard, the court would have to affirm, but on a de novo standard, it reversed. The standard of review does matter in these cases, but we think that should be handled by the trial court in the first instance. You mentioned earlier about the four years mentioned in provision of the plan, and according to what I read, it talks about that no action shall be brought within four years after the occurrence of the loss for which the claim is made. You said after the loss, and then you said something about what that loss was. Occurrence is never defined in the plan, is that right? It's defined in the summary plan description, Your Honor. And what does it define? It's defined as the onset of the disability. That's a page of the plan. The onset of the disability. What does that mean? That means where the disability began, Your Honor. Well, when did the disability begin? According to Ms. Lamantia's complaint at ER-3, it began in August of 1996. And being what? What is alleged in the complaint that says this is the onset? Your Honor, the reason there are two dates, and maybe I can clear up this confusion. This is key to the whole thing. And again, it goes back to are we applying Federal laws or are we applying State law and we're applying the terms of the contract? We are – our argument, Your Honor, is the Court should apply the terms of the contract, which say the – Federal law doesn't control. Your Honor, Federal law controls, but the contract can – the parties can contract around Federal law. Federal law controls the statute of limitations. It incorporates the State statute and has a Federal accrual time. But both of them are four years, so that's out the window, right? Well, the difference is the accrual period, Your Honor. That's exactly right. That's the whole key to this. That's – I agree with Your Honor. Okay. Now, tell me about how you apply the – your interpretation of the contract relative to when this – this accrual should start and how we determine it being occurrence of the loss. Your Honor, it goes in three steps. The plan says four years from the occurrence of the loss. That's at page ER 140. The SPD defines occurrence of the loss as the onset of disability. We then look to the plan, which defines disability. There are two definitions of disability, short-term disability and long-term disability. Short-term disability is when the claimant becomes unable to work at Hewlett-Packard. It's undisputed that that date is August 1996. That's the last day. By the board. She got her short-term disability payments, and now we're into the long-term disability. You're right, Your Honor. Any occupation. And then the second one is any occupation, and that – her 39 weeks of short-term disability expired on May 7, 1997, which can be the latest date of the onset of disability under the terms of the plan. What happened, then, that we can look at the record that we know that she could not perform any occupation? Your Honor, I think there is no evidence in the record to support that, which is why her claim was properly denied. She never came forward with evidence that she can't perform any. Where do we find the accrual date, then, based upon the record on any occupation? Because we're beyond – are we beyond the short-term, or do we look at accrual prior to that? No, Your Honor. It's when she makes the claim – she claims the disability occurred on that date, and that has to be controlling for these purposes, because that's the – it's either August or May, because that's the day that she claims she can't work. The claim that she's brought in this court. Okay. So we're looking at the fact that she says, I can't work anymore. Doesn't show up for work, so that's it. Yes, Your Honor. And she has four years to resolve it internally. And if she doesn't get it resolved, she can come to court. A perfectly reasonable limitation that she failed to meet. She failed to comply with the terms of the contract. And that trumps anything that may happen relative to the claim, the proof of more medical evidence to be submitted, your telephone call, the claim is open. The four years trumps it no matter what. Your Honor, I would submit, first, it trumps it no matter what. Second, it trumps it on the facts of this case, because there is nothing in this record indicating that the plan agreed to extend the contractual suit period, as opposed to the internal appeals period. So we then do not consider the Federal test that she knew or should have known that her claim had been finally denied. Your Honor, that's the test for accrual of the statute of limitations, has nothing to do, we would submit, with the contractual limitations period. But if you want to consider that test, under her theory, remember, she gets to de novo review on the deemed denial theory of Jebion. The claim was deemed denied in June of 1997. She still misses the four-year statute. But, you know, you're going back and forth, it seems to me. If you're going to rely on deemed denied, you never told her that. Instead, after the date when it was supposedly deemed denied, you continued to say, well, bring us more information. So why at a minimum are you not stopped from relying on deemed denied because of inconsistent actions following that date? Your Honor, our argument is this. Either we get – either it was deemed denied, in which case the statute is run. If the statute has been told, then we're entitled to abuse of discretion review because the period was extended. I understand your alternative argument. But I have trouble with your main argument, I guess, more than your alternative. Well, Judge Graber, I don't know how you can have it both ways. You either deem denied and you're going to repudiate what? All the actions that happened later. They're pretty clear. I mean, I don't know that you've got a letter from counsel that says within two months I'm going to give you more medical information. You've got your counsel talking on the phone saying the claim is open and we're supposed to ignore all that. So doesn't that contradict the stop? However, you want to look at the deemed denied. If we're in deemed denied, I want to know it. Your Honor, I don't disagree with any of that. The fact is, with all those extensions and everything, the administrative process concluded before the contractual period or the statute of limitations ran. If it's denied, we're going to do a de novo review. I agree with the district court. The district court is having it both ways. My argument is, it's either barred by time. If it's not barred by time, we have to have abusive discretion because the only way it's not time barred is by some sort of tolling or extension concept. Exactly. So you're going to argue an alternative and let us pick it? No, Your Honor. Our first argument is, all those extensions and so forth, the administrative process concluded in August of 2001, before the statute ran and before the contractual period ran. So any estoppel. Well, it depends a little bit on when you see it. Earlier, you said that the first date she was unable to work was August of 2000. Correct. I'm sorry, August of 1996. And if you use that date, August 8th of 1996, then your letter finally denying came after the end of what you claim is the statute of limitations. Correct, Your Honor. But whatever date we pick, she had enough time to file suit and she didn't. She asked for more time and never provided the information. We think it's time barred. If it's not time barred, it has to be sent back for the application of the correct standard without the treating physician rule. If I may, I'll save my remaining time. Certainly. Thank you. We'll hear from Mr. Stoves. Good morning, Your Honor. I was nodding a lot over there. That last exchange still confuses me. So in part of your description, maybe you can tell me what your nods mean and what I thought I was hearing there. Well, I was agreeing with the court that they certainly cannot have it both ways. They can't have a deemed denial and not be estopped by that agreement. Okay. Was this claim deemed should be deemed denied then? No. Okay. Not from that aspect. And I think that's where we get into this discussion. Why not? Well, because there was an agreement which is reflected in the record. I think Lance Tomei's notes, he was the individual on behalf of VPA handling this matter in 1997. About the telephone call note? I'm sorry? Telephone call note? Correct. Which happened on 19 September, 1997. He reflects a conversation with Brian Dolan, who was ---- Followed by the letter from the claimant's attorney, which indicated we'll have the information there within two months. Maybe. Maybe. Well, it was sort of, we'll try to. Right. Now, that in your argument takes us out of the deemed denial because we're having discretionary actions taken. Correct. Okay? Absolutely. And in fact, they complied with that agreement because when they finally issued their denial in August of 2001, they denied it on the merits, on the medical evidence. They didn't say, oh, well, sorry, your claim was deemed denied four years ago. What are you troubling us for? What is your response to the argument of opposing counsel? There really were two that I'd like to hear your response to. One is, well, reasonable is one thing, but three years is another to respond to the request for additional information. And the second argument is that if anything was extended, it was only the internal appeal and not the time for filing suit in court. What is your response to that? All right. Let me take the second one first. I profoundly disagree that there is no connection between the internal appeal procedure and the so-called statute of repose. The plan and ERISA forbids you from filing a lawsuit until you have exhausted the internal administrative remedies. So if there is an agreement, as there is here, to extend the internal appeal process in effect beyond this four years, then clearly that is an agreement that goes to the filing of a lawsuit. In other words, he wants to say on the one hand, well, it was deemed denied, so you could have gone out and filed a lawsuit the day afterwards if you'd wanted to. And on the other hand, say, well, you know, they waited for four years or whatever it is, and they're too late. Okay. Let's try that into some case law because we can run conflicting probations of the agreement. We can get into the federal law about when the claimant should know or should have known that the claim was denied. We can get all tangled up in that. So now that you've stated your position, what is your legal basis for that position and why we should adopt it? Well, my legal basis is this. First of all, legal authority. Well, my legal authority primarily is Wetzel. Wetzel says that the claim accrues for the purposes of federal law either when the claim has been actually denied or the claimant has reason to know that it has been denied. So you're using the federal standard. Counsel says that that isn't the controlling issue here, that you can use contract to write around that. You're using the federal standard. Right. Under ERISA, and the plan has a choice of law provision in it. I think it's section 11E. It says this plan and all rights under this plan are to be interpreted in accordance with ERISA. And so the plan itself makes it subject to the plenary authority of ERISA. And I submit that federal law has been very clear that although state law governs the statute of limitations, ERISA governs the accrual of the claim. Now, I know that he has this. Do you need to win on that to win? No, because even if you have an internal contractual limitation such as they are arguing for here, it's still subject to theories of waiver and estoppel under normal principles of law. You rely on estoppel then, so that's going to be your legal basis. What, estoppel because they had a phone call, because they said, gee, your time to appeal has been extended? Right. Okay. Well, I'm relying on both, really. Well, that may be true, but where do we go now in the federal law, if we're going to be in federal law, to say, okay, I assume then you want to say that what we should affirm because? We should affirm because nothing in federal law prevents the parties reaching an agreement to extend or waive the applicable time limits. In fact, those kinds of agreements might be encouraged in some situations where the parties are in contact and supplying. Well, there's no issue that the district court now should be considering relative to extending the time that would change the accrual period. Right. Because one thing I would like to say is the fact that the district court found that that 4-year internal accrual statute of repose was unreasonable. And I agree with the court that it is unreasonable. Why is that so? Because the same as the California statute of limitations that applies under Wetzel's analysis. So what's unreasonable about 4 years? Well, 4 years may not be unreasonable. I think the problem is twofold. Number one is that these terms, occurrence of the loss for which a claim is made, and then defining it as the onset of the disability are vague and ambiguous terms. I don't know what they mean. I do know. I guess I have some difficulty with this piece of your argument. Once your client has filed a claim and says, I have been completely disabled since a date certain. That began the time when I could no longer work. Why wouldn't, in ordinary understanding, that person go, when did your disability begin? What was the onset of your disability would be the date that she says she cannot work anymore? I guess I don't get it. I don't understand what's so ambiguous about that. As distinct from the way it was handled, that's a whole different issue. Well, I think the district court was concerned that 4 years could run, because the occurrence of the loss or the onset of the disability could actually be a date, antecedent to the date that she actually stopped working. Now, because, look, she had double pneumonia and pleurisy in December of 94. Well, it seems to me, though, that if the issue is total disability, then the onset date, by definition, is when she has to stop working. And she's going to know that date. Anyone's going to know that date when they have to stop working. Well, that is not my experience. My experience is that many people who shouldn't be at work are still going to work, even though their doctors are telling them, you are disabled and I don't think you should be working. These people are still dragging themselves into work because they need the job. There's evidence in this record that Miss Lamantia told Dr. Lyons, the psychiatrist, that she was off work for 6 months because of the pneumonia and the pleurisy. And she was arguing with her doctors for them to allow her to go back to work because she needed the job. She was afraid she was going to be fired. So it's my experience that dealing with injured workers, that frequently they are in the workplace even when they shouldn't be. So, yes, another thing is that Dr. Herman diagnosed her as having fibromyalgia in June of 1996. Remember, fibromyalgia was one of the primary causes of her disability. So maybe June of 1996 is the onset of disability, even though she was working until August of 1996. But how could she reasonably consider that the onset of disability is later than when she says it began? Do you see what I'm saying? Once she files a claim saying, I am totally disabled and here's the date that I believe I was totally disabled, what's unreasonable about taking her own statement of what that date was and working from that? Well, because the plan doesn't say that. The plan doesn't say it's the date when the claimant files the claim and the date that the claimant asserts in that claim that she became disabled. It uses other language that talks about the onset of disability. So I would bet very good money indeed that if this were an important issue in this case, they would be in here arguing that it began, you know, four years before she stopped working or something, because that would be the onset of her disability. How is an injured worker to know when that four years is going to run? Let me ask you another question that I asked opposing counsel as well. Let's assume that we agree with you on the timeliness of the claim, but we agree with them on the treating physician rule. Who is to make a new assessment, us or the district court? Well, I believe that that depends on the standard of review that the district court should have applied. If you agree that it should have been abuse of discretion, then you will send it back to the district judge to review it for abuse of discretion. Actually, my example had to do with the physician rule, which we now know was incorrect. Well, I do. And my position on that is that even if the court were wrong to apply the treating physician rule, it was harmless error, because the only evidence in the file, in the record that she was disabled from following any occupation, was the evidence of her treating doctors, Dr. Herman and Dr. Agreste. None of the other doctors actually addressed long-term disability. The ones that they sent her to, Dr. Wood, Dr. Nagura, and Dr. Lyons, all three of them were never asked to address long-term disability. She was sent to them for short-term disability, and in fact, Dr. Wood also said she is disabled from following her occupation at Hewlett Packard. So he agreed she was disabled. That's their own doctor. So you have one doctor who says, yes, Dr. Wood, she is disabled from following her occupation at Hewlett Packard. You have Drs. Herman and Agreste both saying that she is disabled or that she should not be at work. Same thing. So where's the prejudice? Where's the abuse of discretion? And finally, isn't that the review of the administrators? We review whether they abused their discretion in dealing with those medical terms, right? Right. Okay. Well, even if the standard is abuse of discretion, it was an abuse of discretion to deny the claim. But that probably is for the district court to address, because you don't have a record reflecting the district court's decision on abuse of discretion, because he did de novo, which I do believe de novo is the correct standard of review, because there were extreme procedural irregularities in the way that Hewlett Packard handled the claim. I was just rechecking here to make sure I knew where we were on this federal standard of review or federal law relative to known or should have known when a claim was denied and the court's discussion of price. So you would say that we should follow what the court's discussion of price is, and that's the way we should write this? Yes, because. And I would also like to make the point that when Hewlett Packard says in this agreement that we will allow you to submit further medical evidence and we will keep the appeal pending until we get that further evidence, the claimant has no reason to know that her claim has been denied. Quite the opposite. She's being told your claim is still open. So until it's denied, I would argue that under federal law, her claim didn't accrue until August of 2001 when it was actually denied. The district court relied on Niki Ando. It sounds like we're beyond that. We're writing a new opinion here. We're going the next step. I think my time is up. Thank you. You have some rebuttal time left. Thank you, Your Honors. Counsel pointed you to Wetzel. I refer to the court to Part 4 of Wetzel, which begins on page 650, which says that the parties can contract around the state limitations period and accrual period, and it remanded to the district court for that determination and didn't decide. So Wetzel did not decide this question. The court is advancing one step beyond where we are. Price was a case where the court found that it was unreasonable to apply the contract so it defaulted to the statute. Northlake, the 11th Circuit case, makes clear the district court said it was unreasonable because of this sort of absurd hypothetical it concocted. Northlake says you don't do a facial challenge, you do an as-applied challenge. The question is, is it reasonable here? We submit that it was. Disability is defined as the onset of the injury, so that claim is not unclear. That's on page ER-129. And finally, he could file – she could file a lawsuit after 120 days under MassMutual 473 U.S. 134, and that's made clear in the current version of the regulations. Unless the Court has any further questions, I think my red light is on. I don't believe that we do. Thank you very much. Thank you, Your Honor. We appreciate the arguments of both counsel. They were very helpful.  And that will bring us to the end of the hearing.
judges: Hall, Brunetti, Graber